# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| MICHAEL A. BRIGHT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV417-194 |
| | ) | |
| JOHN T. WILCHER, *Sheriff*, *et al.*, | ) | |
| Defendants. | ) | |

## **ORDER**

Proceeding *pro se* and *in forma pauperis*, Michael Bright brings this 42 U.S.C. § 1983 action against various prison staff, contending that his Eighth Amendment rights have been violated. The Court now screens his Complaint under 28 U.S.C. § 1915A.[1]

Bright, who is housed at Chatham County Jail, complains that he

---

[1] Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, to establish procedures to govern civil complaints filed in federal court by prisoners and other detainees. Among the PLRA's procedures is the requirement for this Court to conduct an early screening in all civil cases of any complaint in which a prisoner seeks redress from a government entity or official. *See* 28 U.S.C. § 1915A. The purpose of the early screening is to "identify cognizable claims" in the prisoner's complaint and to dismiss any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. *Id*. Therefore, the Court examines plaintiff's Complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.

has consistently been put in "physical and mental harms['] way" by being celled with and placed in contact with mentally ill inmates, gang members, and other ostensibly risky inmates "that have murder, rape, and armed robbery charges" pending against them.[2] Doc. 1 at 5. He "was recently ganged [sic] by two (2) members of these gangs and placed in isolation because [he] defended [himself] against these gang members," but he was then released back into the general population because "Ms. Perry of Classification . . . doesn't like [him]." *Id.* He also complains that the jailhouse food is constitutionally unacceptable, comprising "spoiled milk and sandwiches on stale or moled [sic] bread!" and that the cells are overcrowded, with three prisoners celled together in cells meant for two, and two men housed together in cells meant for one. *Id.* He seeks $800,000 for "humiliation, pain and suffering." *Id.* at 6.

Liberally construed, plaintiff's Complaint alleges violations of his Eighth Amendment rights. To prove a claim for deliberate indifference

---

[2] Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

to inhumane conditions under the Eighth Amendment, Bright bears the burden of showing that: (1) the challenged prison condition is extreme and poses an unreasonable risk of serious damage to his future health or safety (the objective component), and (2) the defendant knew of and disregarded an excessive risk to Plaintiff's health or safety (the subjective component). *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison condition does not violate the Eighth Amendment unless it involves "the wanton and unnecessary infliction of pain." *Chandler*, 379 F.3d at 1289 (internal quotes omitted). Here, plaintiff has not satisfied either prong for his failure-to-protect and spoiled food complaints.

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to ensure the safety of inmates. "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable. A prisoner has a right . . . to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates[.]'" *Purcell ex rel. Estate of Morgan*

3

*v. Toombs Cty., Ga.*, 400 F.3d 1313, 1320-21 (11th Cir. 2005) (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)). That a prisoner must face a substantial risk of serious harm, "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,' but must be balanced against competing penological goals." *Purcell*, 400 F.3d at 1321 (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)). And prison officals are not "guarantors" of a prisoner's safety. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Farmer*, 511 U.S. at 845 (when enforcing the duty to provide "reasonable safety" to inmates, such a standard requires "due regard for prison officials 'unenviable task of keeping dangerous men in safe custody under humane conditions.'").

Bright's allegation that he feels generally alarmed by the presence (in a jail) of other inmates and was "ganged by two (2) members" of "the Bloods, the Gripps, G.D. and The Ghostface!", such that he was "placed in isolation" for "defend[ing] [him]self" for some indeterminate amount of time, falls far short of "something even approaching the 'constant threat of violence.'" *Purcell*, 400 F.3d at 1321 (cite omitted); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (a plaintiff must prove the condition he

4

complains of is sufficiently serious to violate the Eighth Amendment); *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (the right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm."). Nor does he allege that he has in fact been harmed -- only that he was placed in, and then released from, isolation. Doc. 1 at 5; *see* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . without a prior showing of physical injury."). Nothing rises to an Eighth Amendment claim here.

As to his culinary complaints, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). When a prisoner's allegations concern quality or preparation of food, courts generally hold that the Constitution merely "requires that food be prepared in a manner that reasonably accords with sound sanitary procedures."

*Kennibrew v. Russell*, 578 F. Supp. 164, 168 (E.D. Tenn. 1983). Allegations of a single incident, or isolated incidents, of contamination are insufficient to state a claim. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Rather, a plaintiff must show that unsanitary conditions "pose[d] an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotes omitted); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (the Constitution "'does not mandate comfortable prisons,' and only deprivations of 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.").

Bright has not shown that, viewed objectively, "he is incarcerated under conditions posing a risk of serious harm" to his present or future health. *Farmer*, 511 U.S. at 834. Occasional moldy bread and spoiled milk, while unpleasant, do not rise to the level of a constitutional violation. *See, e.g., Perez v. Sullivan*, 100 F. App'x 564, 567 (7th Cir. 2004) (serving spoiled milk is not a constitutional violation); *Velthusen v. Aramark Corrrectional Servs., Inc.*, 2017 WL 236191 at *2 (W.D. Mich. Jan. 19, 2017) (neither is moldy bread ); *see also Jinks v. Medlin*, 2015 WL 4716050 at *21 (S.D. Ga. Aug. 7, 2015) (moldy bread and spoiled

milk, as well as tainted meat and generally unsanitary conditions, are neither "extreme" nor "pose[ ] a risk of harm to Plaintiff so grave as to violate contemporary standards of decency.").[3]

Further, plaintiff has not alleged facts suggesting that defendants acted with "deliberate indifference." To establish the subjective component of an Eighth Amendment claim, a plaintiff must demonstrate that the prison officials had actual knowledge of, but chose to disregard, an excessive risk to the prisoner's health or safety. *Farmer*, 511 U.S. at 837 (establishing a demanding standard for "deliberate indifference" that exceeds *civil* recklessness (failure to act in the face of an excessive risk of harm that the defendant "should have" perceived) and requires

---

[3] Indeed, isolated incidents like this are rarely serious enough to constitute a violation of the Eighth Amendment. *See, e.g., George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) (a single incident of prisoner food poisoning is not a constitutional violation); *Watkins v. Trinity Serv. Group Inc.*, 2006 U.S. Dist. LEXIS 85592 (M.D. Fla. Nov. 27, 2006) (isolated food poisoning and discovery of *maggots* in prison food were not sufficiently serious deprivations to violate prisoner's constitutional rights, as physical injuries of diarrhea, vomiting, cramps, and nausea were considered *de minimis*); *Bennett v. Misner*, 2004 WL 2091473 *20 (D. Or., Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with *maggots* are sufficiently serious to constitute an Eighth Amendment violation"); *Islam v. Jackson*, 782 F. Supp. 1111, 1114 (E.D. Va. 1992) (an isolated two week period of food contamination, including food *infested with maggots*, not sufficiently serious). Even the lack of sanitation in certain prison kitchen and food areas, though "appalling" and a risk factor for "contracting any number of food-borne diseases," does not in and of itself amount to an Eighth Amendment violation. *See, e.g., Grubbs v. Bradley*, 552 F. Supp. 1052, 1128 (D. Tenn. 1982) (presence of vermin alone did not amount to a constitutional violation); *Bennett*, 2004 WL 2091473 at *20.

*criminal* recklessness (subjective awareness, and conscious disregard, of an excessive risk to prisoner health or safety)); *see also Lamarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) (to demonstrate an official's deliberate indifference, the prisoner must prove that the official possessed knowledge of the condition and the means to cure that condition).

Plaintiff's complaint contains no allegations that defendants failed to feed him, that defendants fed him nutritionally inadequate food, or (other than sporadic, isolated instances of spoiled milk and moldy bread) that they prepared his food in an unsanitary manner. Therefore, the complaint fails to allege either that, objectively, he was exposed to a serious risk of harm to his health or safety, *Farmer*, 511 U.S. at 834, or that defendants were consciously indifferent to any such excessive risk. Therefore, this claim too fails.

Bright, however, also contends that overcrowding (*i.e.*, celling two inmates in a one-man unit and three inmates in a two-man unit) at the jail constitutes cruel and unusual punishment. It has long been established that double-celling does not, on its own, violate the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981).

Undoubtedly, life in cramped conditions is "unpleasant and regrettable," *Smith v. Fairman*, 690 F.2d 122, 125 (7th Cir. 1982), but "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. The inquiry is a fact-sensitive one, however, that requires an examination of the "totality of the conditions" to determine whether "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time" might violate the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 542 (1979); *compare Jordan v. Wolke*, 615 F.2d 749 (7th Cir. 1980) (confining four prisoners in a 90 square foot cell with day access to a corridor and day room, where the majority of pretrial detainees were released from that condition in less than 60 days, did not violate the Constitution), *with Campbell v. Cauthron*, 623 F.2d 503 (8th Cir. 1980) (confining five (and up to eight) pretrial detainees 24-hours-a-day to cells between 130 and 143 square feet is unconstitutional). The Court needs more, however, for Bright does not assert that he has himself been housed in a constitutionally deficient double- or triple-celled unit for any extensive period.

In order to evaluate his overcrowding claims, Bright is **ORDERED** to amend his Complaint within **30 days** of service of this Order to provide the Court with further information concerning the size and configuration of the cells where he is (*personally*) confined, the number of inmates in *his* cell, the length of his confinement in that cell, and the times that he is allowed to leave that cell for any purpose during the day. Plaintiff is reminded that lying under oath, either live or "on paper," is illegal and punishable by severe sanctions, including criminal prosecution. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).[4]

Further, Bright names Sheriff John T. Wilcher, Chief

---

[4] Bright must include a *coherent* "short and plain statement of the claim showing" that he is entitled to the relief sought. Fed. R. Civ. P. 8(a)(2). That means he must present the Court with the factual allegations that support his constitutional claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaints must contain factual allegations "sufficient to raise a right to relief above the speculative level"). Mere conclusions that defendant violated the law are not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Bright is advised that his amended complaint will supersede the original complaint and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading"). Once he files an amended complaint, the original pleading will no longer serve any function in the case.

Administrator Mr. Freesemann, Heads of "Classifs" Mr. O'Del, Ms. Miller, and Ms. Perry, as well as "All Senior Staff Members of Chatham County Jail" as defendants. Doc. 1. Aside from Sheriff Wilcher, who runs the jail in his official capacity, Bright does not allege that any other defendant is responsible for, much less even tangentially involved with, setting or enforcing the celling practice at Chatham County Jail. Simply naming someone in a complaint does not state a plausible claim against them.

Meanwhile, it is time for Bright to pay his filing fee. His PLRA paperwork reflects $0 in current balance and $0 in recent deposits. Doc. 5 at 1. He therefore owes no initial partial filing fee. *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall therefore set aside and remit 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Also, the Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another

institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED**, this  8th  day of December, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA