

FILED
Scott L. Poff, Clerk
United States District Court

By jburrell at 1:47 pm, Oct 17, 2018

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MICHAEL A. BRIGHT,                )
                                  )
      Plaintiff,              )
                                  )
v.                                )      CV417-194
                                  )
JOHN T. WILCHER, *Sheriff*, *et al.*,   )
                                  )
      Defendants.             )

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Michael Bright brings this 42 U.S.C. § 1983 action against various prison staff, contending that his Eighth Amendment rights have been violated. The Court, after screening his Complaint pursuant to 28 U.S.C. § 1915A, ordered Bright to file an Amended Complaint to cure the deficiencies of his pleading. Bright complied, thus the Court screens his Amended Complaint.[1]

---

[1] The Prison Litigation Reform Act (PLRA) requires federal courts to conduct an early screening in all civil cases of any complaint in which a prisoner seeks redress from a government entity or official. *See* 28 U.S.C. § 1915A. The purpose of the early screening is to "identify cognizable claims" in the prisoner's complaint and to dismiss any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. *Id*. Similarly, 42 U.S.C. § 1997e(c)(2) allows the Court, under the same four standards for dismissal listed in § 1915A, to dismiss any prisoner suit brought "with respect to prison conditions." Therefore, the Court examines

## I.   Background[2]

Bright asserts that Chatham County Jail staff have "knowingly and constantly kept[ ] [him] in both physical and mental harms way!"  Doc. 8 at 1.  He has been housed with "violent mental health inmates" and, as a result of this administrative decision, has been stabbed by one of his cellmates and bitten by another and "attacked" twice by gang members in his block.  *Id*.  He argues that, having only been charged with "stalking" (an offense he apparently considers to be non-violent), he has been incorrectly celled with violent offenders who pose an extreme and ongoing risk to his safety.  *Id*.  He also complains that the food is prepared in unsanitary conditions and the jail is overcrowded, with a constant population of 84 inmates in a facility built for 56 and three inmates regularly housed in a 9' x 12' cell made for two.  *Id*. at 2.

---

plaintiff's Amended Complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.

[2]   Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Amended Complaint are taken as true and construed in the light most favorable to the plaintiff, *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

## II.   Analysis[3]

As set forth in the Court's initial screening order, Bright names Sheriff John T. Wilcher, Chief Administrator Mr. Freesemann, Heads of "Classifs" Mr. O'Del, Ms. Miller, and Ms. Perry, as well as "All Senior Staff Members of Chatham County Jail" as defendants.  Doc. 1; doc. 8. Aside from Sheriff Wilcher, who runs the jail in his official capacity, and "Ms. Perry," who enforces inmate assignment procedures (*see* doc. 8 at 2), Bright does not allege that any other defendant is responsible for, much less even tangentially involved with, setting or enforcing the

---

[3]   As a preliminary matter, dismissal for failure to exhaust administrative remedies is not proper at this stage.  Under the PLRA exhaustion provision, a prisoner must exhaust all available administrative remedies before filing an action that challenges the conditions of his confinement.  *See* 42 U.S.C. § 1997e(a).  Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate."  *Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA"); *but see Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1856-57 (2016) (clarifying that where a remedy is available in name only (*i.e.*, it is "officially on the books, [but] not capable of use to obtain relief"), an inmate need not exhaust it).

Plaintiff's allegations are, at least on preliminary review, sufficient to satisfy the exhaustion requirement.  He says that he has lodged a flurry of grievances and other communications regarding the risky celling and food preparation issues, both verbally and written, but has been ignored or denied.  Doc. 8 at 2; *but see id.* at 3 (grievance attached as an exhibit but only referring to an issue with his court-appointed counsel in his state felony case).  It is unclear that he has *fully* exhausted his administrative remedies, but at this stage of the proceedings, dismissal for failure to exhaust would be improper.  *See Cole v. Secretary, Department of Corrections*, 451 F. App'x 827, 828 (11th Cir. 2011) ("The exhaustion requirement is an affirmative defense, and a prisoner is not required to plead or demonstrate exhaustion in his complaint") (citing *Jones*, 549 U.S. at 216).

celling practice at Chatham County Jail. Simply naming someone in a complaint does not state a plausible claim against them. Those other defendants should be **DISMISSED**.

## B. Eighth Amendment Violations

Liberally construed, plaintiff's Amended Complaint waves at violations of his Eighth Amendment rights. To prove a claim for deliberate indifference to inhumane conditions under the Eighth Amendment, Bright bears the burden of showing that: (1) the challenged prison condition is extreme and poses an unreasonable risk of serious damage to his future health or safety (the objective component), and (2) the defendant knew of and disregarded an excessive risk to plaintiff's health or safety (the subjective component). *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison condition does not violate the Eighth Amendment unless it involves "the wanton and unnecessary infliction of pain." *Chandler*, 379 F.3d at 1289 (internal quotes omitted). Here, plaintiff has satisfied neither prong.

### i. Misclassification

It is well established that "the Constitution does not require

elaborate prisoner classification at the jail level." *Jones v. Diamond*, 594 F.2d 997, 1016 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981); *see also Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (the Due Process Clause is not implicated by prisoner classification and eligibility for rehabilitative programs, even where an inmates suffers "grievous loss" as a result). Indeed, "[n]ot having been convicted, pretrial detainees are all on the same footing and, in the absence of some special circumstance, are entitled to no different treatment than that accorded to others in the same class." *Jones*, 594 F.2d at 1016. In other words, a pretrial detainee who faces felony charges (*i.e.*, felony "stalking"), who is housed with other felony suspects, and who is attacked without warning by another pretrial detainee, fails to state a constitutional claim. *Wiley v. Blanco*, 2007 WL 1747019 at *5 (E.D. La. June 15, 2009); *Yarbough v. Elrod*, 1988 WL 58586 at *1 (N.D. Ill. May 31, 1988). Bright's claim, insofar as he alleges he was "misclassified" to the wrong celling unit, is dead in the water.

And to the extent Bright alleges more -- namely, that he has been repeatedly attacked by the other prisoners in the violent felony unit -- he still fails to state a constitutional claim. "It is only when the officials fail

to protect prisoners from homosexual attacks, personal violence, or unnecessary contact with the contagiously ill that the federal courts are warranted in entering the classification picture." *Jones*, 594 F.2d at 1016. When prison officials become aware of a threat to an inmate's health and safety, the Eighth Amendment's proscription against cruel and unusual punishment imposes a duty upon those officials to provide reasonable protection. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however." *Id.* (citing *Davidson v. Cannon*, 474 U.S.344, 347-48 (1986)). The official's conduct must manifest "conscious or callous indifference to a prisoner's rights." *Zattler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). Prison officials are not held liable for every attack by one inmate upon another, *Zattler*, 802 F.2d at 400, nor are they guarantors of a prisoner's safety. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of "a strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. *Brown*, 894 F.2d at 1537.

Here, the plaintiff has failed to offer any evidence that defendants Wilcher or Perry were aware that there was a strong likelihood that he would be assaulted if assigned to the "violent" classification. Nor has Bright even argued that such a strong likelihood would have been apparent to either defendant at the time of his confinement to Chatham County Jail. Moreover, while the plaintiff insists that defendant's classification decision was "incorrect," he has not shown that the classification decision was the result of anything more than mere negligence.[4] Indeed, his repeated complaints about Ms. Perry's "classification" decisions (which he contend are motivated in large part by her personal disdain for him) merely harp on her denial of his requests to be placed on "the waiting list for both the chaplains' program, and as a dog trainer," *not* his initial assignment to the "violent" offenders unit. Doc. 8 at 1-2.

Even indulging the assumption that defendants intentionally

---

[4]   The role of the courts is to enforce constitutional standards and to protect the constitutional rights of prisoners. *Ruiz v. Estelle*, 679 F.2d 1115, 1126 (5th Cir. 1982). But this role does not include "second-guessing prison administrators or supervising prison administration," *id.* at 1126, or becoming "enmeshed in the minutiae of prison operations." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). Prison administration must be left to the discretion of prison administrators. *Id.*

misclassified Bright[5] in no way salvages his claim, for he has made no allegation that either Wilcher or Perry had any knowledge of a strong likelihood that plaintiff would be attacked if placed in his "violent" felony cell block.   The Eighth Amendment, therefore, affords no basis for recovery against either for Bright's classification to the high-risk ward.

## ii.   Food Preparation

As to his culinary complaints, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).   When a prisoner's allegations concern quality or preparation of food, courts generally hold that the Constitution merely "requires that food be prepared in a manner that reasonably accords with sound sanitary procedures." *Kennibrew v. Russell*, 578 F. Supp. 164, 168 (E.D. Tenn. 1983). Allegations of a single incident, or isolated incidents, of contamination are insufficient to state a claim.   *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).   Rather, a plaintiff must show that unsanitary

---

[5]   He is, after all, being held on charged of "stalking."   Doc. 8 at 1.   It is unclear that he is *not* properly considered a high-risk, violent offender pursuant to classification guidelines.

conditions "pose[d] an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotes omitted); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (the Constitution "'does not mandate comfortable prisons,' and only deprivations of 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.").

Bright alleges that, in addition to serving moldy bread and spoiled milk, the jail permits "young men" to prepare the food with "unsanitized hands" despite being observed "openly play[ing] with and fondl[ing] their [privates]." Doc. 8 at 2. He has filed grievances on the issue, putting jail staff on notice of this unsanitary meal preparation, but has been ignored. *Id.* While occasional moldy bread and spoiled milk do not rise to the level of a constitutional violation, *see, e.g., Perez v. Sullivan*, 100 F. App'x 564, 567 (7th Cir. 2004) (serving spoiled milk is not a constitutional violation); *Velthusen v. Aramark Corrrectional Servs., Inc.*, 2017 WL 236191 at *2 (W.D. Mich. Jan. 19, 2017) (neither is serving moldy bread), food that actually makes a prisoner ill may, *Bowens v. Sikes*, 2017 WL 486266 at *5 (S.D. Ga. Jan. 4, 2017). Such an unhygienic practice, however discomfiting to observe, does not render otherwise nutritionally

adequate food unconstitutionally unsafe without a showing of injury. *See, e.g., Miles v. Konvalenka*, 791 F. Supp. 212, 214 (N.D. Ill. 1992) (even a dead mouse in an inmate's meal was only a "minimal deprivation" without a showing of injury); *Lattier v. Cupp*, 2009 WL 3046327 at *5 (W.D. La. Sept. 21, 2009) (staff practice of spitting tobacco in kitchen and discovery of multiple gloves in prepared food not enough to rise to a constitutional violation).

Bright does not contend the food regularly fails to meet minimal standards of safety, causes him some injury, prevents his recovery from some health condition, or is so routinely unsanitary that it presents a serious and immediate threat to his safety. *See Bowens*, 2017 WL 486266 at *5-6 (citing *Drake v. Velasco*, 207 F. Supp. 2d 809, 812 (N.D. Ill. 2002)). Indeed, he has "failed to describe any complications resulting from 'particular, known unsanitary practices which are customarily followed' by [the jail]." *Lattier*, 2009 WL 3046327 at *5. He simply has not demonstrated that prison officials had actual knowledge of, but chose to disregard, an excessive risk to his health or safety. *Farmer*, 511 U.S. at 837 (establishing a demanding standard for "deliberate indifference" that exceeds *civil* recklessness (failure to act in the face of an excessive

risk of harm that the defendant "should have" perceived) and requires *criminal* recklessness (subjective awareness, and conscious disregard, of an excessive risk to prisoner health or safety)); *see also Lamarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) (to demonstrate an official's deliberate indifference, the prisoner must prove that the official possessed knowledge of the condition and the means to cure that condition).

Plaintiff's Amended Complaint contains no allegations that defendants failed to feed him, fed him nutritionally inadequate food, or (other than sporadic, isolated instances of spoiled milk and moldy bread) that they prepared his food in an unsanitary manner. Therefore, the Amended Complaint fails to allege either that, objectively, he was exposed to a serious risk of harm to his health or safety, *Farmer*, 511 U.S. at 834, or that defendants were consciously indifferent to any such excessive risk. Therefore, this claim too fails.

### iii.   Overcrowding

Bright has also amended his overcrowding claim, arguing that the jail's routine celling practice (*i.e.*, celling three inmates in a two-man unit) constitutes cruel and unusual punishment. Doc. 8 at 2. Double-

celling does not, on its own, violate the Constitution, *Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981), though "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time" might. *Bell v. Wolfish*, 441 U.S. 520, 542 (1979).

Bright complains that inmates have been continuously triple-celled in a 9' x 12' (108 square feet) cell made only to house two inmates since May 2017.  Doc. 8 at 2.  While uncomfortable overcrowding "might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment," *Bell*, 441 U.S. at 542, plaintiff has not shown that either he is himself celled in an unconstitutional manner (he only contends that the jail triple-cells, not that *he* is held in a two-man cell containing three men), that he is so confined an unreasonable number of hours each day (he says how much time he spends in his cell), or that there is inadequate space for sleeping (he doesn't mention it).  *Id.* at 542-43.  Even assuming he himself is so housed, his confinement to a 108 square foot cell with two others for sleeping is not enough to muster an overcrowding claim.  *Compare Jordan v. Wolke*, 615 F.2d 749 (7th Cir. 1980) (confining four prisoners in a 90 square foot cell with day access to

a corridor and day room, where the majority of pretrial detainees were released from that condition in less than 60 days, did not violate the Constitution), *with Campbell v. Cauthron*, 623 F.2d 503 (8th Cir. 1980) (confining five (and up to eight) pretrial detainees 24-hours-a-day to cells between 130 and 143 square feet is unconstitutional). This claim fails as well.

For the reasons explained above, Bright's Amended Complaint should be **DISMISSED** for failure to state a claim. This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this  <u>17th</u>  day of October, 2018.

<u>UNITED STATES MAGISTRATE JUDGE</u>
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14